## No. 6887.

### SUCCESSION OF FRANÇOIS BOUGÈRE. ON OPPOSITION OF MRS. AMÉLIE RICHARD.

An administrator of a succession who receives from his predecessor in office a certain sum of succession money, which the former administrator had collected, and taken his full commission from, is not entitled to commission on said sum, merely because he divides the money among those to whom it belongs. Such a division does not amount to a new administration of the money.

A second administrator, whether he be a public administrator or not, is not entitled to a commission on any asset of the succession, even though he may have collected it, if the asset appeared in the inventory of, and paid a commission to the former administrator.

Parol evidence is admissible to prove the transfer to a third person of a legatee's interest in a succession.

Funds of the deceased deposited in a bank of a foreign State are a part of his succession, and should be taken into account by the executor in distributing the assets of the succession.

A public administrator, as such, is not entitled to administer as dative testamentary executor a succession of which the testamentary executor has died, and one or more of the heirs are present in the State.

Where a public administrator, who is one of the heirs of a succession, is appointed dative testamentary executor of the same, it will be assumed, if the contrary is not shown, that he was appointed, not as public administrator, but as heir, under the general law, and his commission will be fixed at two and a half per cent.

**A**PPEAL from the Parish Court of St. Charles. *Harper, J.*

*Charles F. Claiborne* and *J. D. Augustin* for executor and appellant. *Breaux, Fenner & Hall* for opponent and appellee.

The opinion of the court was delivered by

DEBLANC, J. François Bougère died in the State of Louisiana. His

legal representatives reside, some here, others in France. E. Filleul, the executor appointed by said deceased's will died, and Achille D. Bougère, the public administrator of the parish of St. Charles was—in his stead—appointed as dative testamentary executor. In that capacity, he filed a tableau of proposed distribution, which was homologated on the 19th of July 1876, so far as not opposed.

Mrs. Amélie Richard, as assignee of one of the heirs of François Bougère, disputes the correctness and opposes the allowance of the clauses hereafter mentioned and carried in the tableau filed by said executor.

1. The rate and amount of the commission which he charges against the succession. ,

2. McLeran's account as surveyor.

3. A draft of E. Filleul, the former executor, in favor of Levois & Jamison.

The opponent also asks that—in the proposed distribution, funds of the succession, which are deposited in a bank in France, be taken into consideration.

I. ·

In case of successive administrations, the commission to which each of the incumbents is entitled, must be reckoned on the portion of the estate which—at the date of each appointment—is, or remains to be administered.

When Achille D. Bougère was appointed as executor, what portion of François' estate was still subject to administration? He, then, caused an inventory to be made, and we are informed—by that inventory—that the remainder of the estate in Louisiana, was composed of a balance of funds deposited in the State National Bank, and which—with the interest thereon—aggregated the sum of ...................... $12,707 49
and of notes, including one for which the last executor is

liable, amounting, together, to........................ 12,467 46⅙

Total...... .....................................$25,174 95⅙

on which Achille D. Bougère claims a commission of five per cent.

The money deposited in bank was collected by the first executor, and he alone was entitled to and received a commission thereon. That money passed under the control of the second executor, subject to only a division of the same between those to whom it belonged, and the mere division of funds collected by one of the executors, and on which that one has taken the whole of his commission, does not constitute an additional administration of those funds, and justify an additional compensation to his successor.

When Achille D. Bougère was appointed dative testamentary executor of the last will of François Bougère, he was indebted unto the suc-

cession of said deceased for $2062 92⅔, and opponent contends that he should be allowed no commission for the collection of that amount from himself. The amount then due was evidenced by a note, and the note was one of the unrealized effects which passed under the administration of the second executor. It is included in the inventory on which a commission is charged, and no further commission can be charged for its collection.

The statute of 1870 provides that "the public administrator shall receive five per cent *on all collections* &c.; but this clause must be construed as applying to the collection of claims not carried in the inventory, or which—if carried—are therein classed as bad debts, and on which no commission has once been levied. When debts so classed are subsequently collected, the executor—on such collections—is entitled to the per centage allowed by law. If otherwise, then on the day the inventory is made, the executor might commence his administration by taking a commission measured to the amount of the inventory, take on the appraised value of notes and property, and again on the proceeds realized from the recovery of the same notes, from the sale of the same property. Such a charge is authorized neither by the Code, nor by the statute of 1870.

## II.

The opposition to McLeran's account, as surveyor, though mentioned on the first page of the appellee's brief as one of the only four oppositions to be urged in this court, is not referred to in any other portion of said brief; and—were it otherwise—the disputed account is sustained by the evidence and was properly allowed.

## III.

The excluded testimony of Charles F. Claiborne Esq., tending to show that Elie Bougère has no longer any interest in the funds in France—that, in 1874, he sold his interest therein to Levois & Jamison, and thus to substantiate the latter's claim and justify its acknowledgment by the executor, should have been admitted. That testimony, judging from the tenor of the bill of exception taken by the executor's counsel, was not offered to prove the existence of a debt created by either the first or the second executor, but a transfer by one of the legatees of his share of funds deposited in a bank in France. If its correctness be hereafter established by the admission of the excluded evidence, or otherwise, that claim should not be classed among the liabilities of the succession, but as a payment made to Elie Bougère and in deduction of his share.

## IV.

The funds deposited in France are a part of the succession and should—by the executor—be taken into account, in the settlement of

said succession: if practicable, the legatees who are in France should be paid out of exclusively the funds deposited with the French bankers, and the legatees residing in Louisiana out of the funds in this State.

As said by this court, in Hepp et al. vs. Lafon et al., executors, "the obligations we owe to our own citizens would prevent us from sending one of them to seek in foreign tribunals for that justice which we perceive he is entitled to and we have the means of extending to him, etc."

2 N. S. 447 ; 13th L. R. 298; 6 A. 152 ; Story on the Conflict of Laws § 513 ; 3 Pickering 128.

## V.

The last questions raised by appellee's counsel, one in his brief, the other in his pleadings, are:

1. "That this was not a case in which the public administrator could have been appointed, in his official capacity, as executor of the last will of François Bougère."

2. "That having filed his account as dative testamentary executor, he can not now gainsay what he has so alleged for the iniquitable purpose of charging extortionate commissions."

Under the law, the public administrator can be called upon or claim to administer intestate successions when there is no surviving husband or wife, or heir present or represented in the State, and testate successions when—from any cause—the executor can not discharge the duties of his office.

In this case, the executor appointed by the will was dead, some of the heirs—the second executor is one of them—were and are present in the State, and the public administrator could not have been—as such—legally appointed as dative testamentary executor of the will of François Bougère. The only evidence in the record of his appointment is a certificate from the clerk, which is in these words: "Now, know ye that Achille D. Bougère, public administrator of the parish of St. Charles, has been and he is hereby appointed dative testamentary executor to the said succession."

The qualification of "public administrator" is attached to his name, and does in no way qualify his appointment as executor. In his application to obtain that appointment, he expressly relied on the third section of act No. 87 of the regular session of the Legislature, in 1870—and that section—it is evident—provides for only those cases when—though living—the executor, from any cause, can not discharge the duties of his office. The original appointment not being in the transcript, we must presume that, though Achille D. Bougère applied for the executorship in a capacity and under a law which did not entitle him to it, that executorship was conferred upon him as an heir and under the general law. His commission was properly reduced from four to two and a half per

cent. His right to defray out of the succession the necessary expenses to be incurred for the distribution of the funds which are in France, and for his settlement—in regard to these funds—with all the interested parties, is specially reserved. R. C. C. 1682.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be partly reversed and partly amended as follows, to wit:

1. It is ordered that, in the settlement of the succession of François Bougère, the dative testamentary executor take into consideration the funds thereto belonging and deposited in France—and, as far as practicable, that the legatees there residing be paid out of said funds—and the legatees residing in Louisiana out of the funds in this State.

2. It is further ordered that said executor levy, for his own benefit, a commission of two and a half per cent on all of the assets of the succession included and described in the inventory of the same, made by Charles Theodore Soniat, a notary public, on the 18th of April, 1876, except the funds deposited in the State National Bank.

3. It is also ordered that, as concerns the question of costs incurred in the lower court, the rejection of the claim of Levois & Jamison and the order consequent on that rejection, commanding the executor to credit opponent with the four forty-eighth part of the funds in France, the judgment of the lower court is avoided and reversed, and in this case remanded for a new trial of only these two last mentioned branches of this controversy and as to the costs.

4. It is lastly ordered that, in all other respects, the judgment appealed from is affirmed, and that it is so partly affirmed, amended, and reversed, and a new trial granted, as between exclusively the parties to this appeal: the costs of the appeal to be paid by opponent.